[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter comes before the court on defendant, Laurel Hill Association's (LHA) motion to dismiss this appeal on the ground that the court lacks subject matter jurisdiction because the plaintiffs are not aggrieved by the decision of the Brookfield Zoning Commission to reenact Brookfield Zoning Regulation § 242-404 D(2)(d), which limits the total number of multifamily dwelling units in the Town of Brookfield. On March 16, 1995, the plaintiffs, Fairfield Resources Management, Inc. (FRM); and Rock Acquisition Limited Partnership (RALP), commenced this appeal by service of a seven count appeal upon the defendants, Town of Brookfield (Town); Brookfield Zoning Commission (Commission); John L. Martino, Chairman of the Commission; Ruth Burr, the Clerk of the Town; and the Laurel Hill Association (LHA).
The Town and Commission filed, on May 9, 1995, a request that the plaintiffs revise their appeal. In response, the plaintiffs filed, on June 8, 1995, their objections to the defendants' request to revise the appeal.
On August 30, 1995, however, the plaintiffs filed a revised seven count appeal. Further, on September 1, 1995, the plaintiffs filed their brief in this appeal.
On September 27, 1995, the Commission filed a motion to strike counts six and seven of the plaintiffs' revised appeal, the plaintiffs' statement of amount in controversy attached to the revised appeal, and all counts in the revised appeal regarding the Town, John L. Martino, Chairman of the Commission, and Ruth Burr, the Clerk of the Town. The Commission filed a memorandum of law in support of its motion to strike. Subsequently, on October 25, 1995, the plaintiffs filed a withdrawal of this appeal as to the defendants, John L. Martino and Ruth Burr.
The plaintiffs then filed on October 27, 1995, a five count second revised appeal. The plaintiffs allege the following facts in their second revised appeal. The defendant LHA presented an application to the Commission for a change to the zoning regulations which would reenact a cap on the number of multifamily dwelling units in Brookfield. Only a year before, the Commission had approved the removal of Brookfield's cap on the number of multifamily dwelling units. On February 9, 1995, CT Page 4255-EE the Commission, however, decided to approve LHA's application to reenact the cap on the number of multifamily dwelling units.[1] The plaintiffs allege that the Commission's approval of this cap violates the General Statutes, the Connecticut Constitution, and the United States Constitution. Further, the plaintiffs allege that the Commission is estopped from enforcing this zoning regulation against them and their properties because of a stipulated agreement the parties entered in March 1994.[2] The plaintiffs and defendants entered this stipulated agreement with the Superior Court for the judicial district of Danbury.
On November 1, 1995, the Commission filed its answer to the plaintiffs' second revised complaint.
On December 4, 1995, LHA filed a motion to dismiss this appeal on the ground that the court lacks subject matter jurisdiction because the plaintiffs are not aggrieved by the Commission's decision to reenact the cap on multifamily dwelling units. LHA filed a memorandum of law in support of its motion to dismiss on December 4, 1995. On December 4, 1995, LHA also filed its brief in which it adopted the Commission's brief. The Commission filed its brief in this appeal on December 4, 1995, as well.
In response to LHA's motion to dismiss on December 29, 1995, the plaintiffs filed a memorandum of law in opposition. On February 6, 1996, the plaintiffs filed a supplemental memorandum of law in opposition to LHA's motion to dismiss.
On February 9, 1996, LHA filed a motion to strike the plaintiffs' supplemental memorandum of law in opposition to LHA's motion to dismiss. LHA argued that the memorandum was untimely because it was neither filed with the court nor served on LHA until one day after the time period established by the court for supplemental briefs. On February 15, 1996, the plaintiffs filed a motion for the court to accept its supplemental memorandum of law because the delay in service was immaterial and inadvertent. On February 26, 1996, the court, Leheny, J., denied LHA's motion to strike the plaintiffs' supplemental memorandum, and granted the plaintiffs' motion for the court to accept the plaintiffs' supplemental memorandum. Meanwhile, on February 15, 1996, LHA also had filed a supplemental memorandum of law in support of its motion to dismiss.
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis omitted; internal quotation marks omitted.) Gurliacci v. Mayer,218 Conn. 531, 544, 590 A.2d 914 (1991). In deciding a motion to dismiss, CT Page 4255-FF the trial court must consider the allegations of the complaint in their most favorable light. Savage v. Aronson, 214 Conn., 256, 264, 571 A.2d 696
(1990). "A ruling on a motion to dismiss is neither a ruling on the merits of the action . . . nor a test of whether the complaint states a cause of action." (Citations omitted.) Discover Leasing Inc. v. Murphy,33 Conn. App. 303, 306, 635 A.2d 843 (1993). Rather, a motion to dismiss is "granted solely on jurisdictional grounds." Id., 307.
LHA moves to dismiss this appeal on the ground that the court lacks subject matter jurisdiction because the plaintiffs are not aggrieved by the Commission's decision to reenact the cap on the number of multifamily dwelling units in Brookfield. In support, LHA argues that the plaintiffs cannot appeal the reenactment of the cap on the number of multifamily dwelling units because the cap "affects the community as a whole and not any particular piece of land. . . ." (Laurel Hill Association's Memorandum of Law in Support of Motion to Dismiss, p. 1.) Further, LHA argues that because the plaintiffs cannot claim a right or interest in the zoning amendment which distinguishes them from the community as a whole, the plaintiffs lack standing. Accordingly, LHA argues that the court should dismiss the plaintiffs' appeal. Additionally, LHA argues that the court disposed of this issue over a year ago when other Brookfield property owners challenged the deletion of the cap on the number of multifamily dwelling units.
The Commission addresses the issue of aggrievement in its brief to the court filed on December 4, 1995. Similar to LHA, the Commission argues that in "reinstating the multi-family cap regulation, the Commission neither altered the requirements for a multi-family approval, nor ensured that any particular multi-family application would be granted or denied. As a result, the plaintiffs' contention that the Commission's decision will influence the development of their property `is mere speculation.'" (Brief of Defendant, Brookfield Zoning Commission, p. 5.) Further, the Commission argues that because the reinstatement of the multifamily dwelling unit cap cannot be applied to a particular property, and the Commission has not acted upon a specific land use application from which the plaintiffs can claim aggrievement, the court should dismiss this appeal.
In contrast, the plaintiffs argue that they are uniquely situated compared to other landowners in Brookfield. The plaintiffs argue that they have continuously sought to complete their quarrying operations so they could construct a residential development on their property. Further, they submitted a proposed site plan for a residential development as part of a stipulated judgment they entered with the Town on March 14, 1994. The plaintiffs also argue that while the regulations may affect the entire Town of Brookfield, the regulations were specifically proposed and enacted CT Page 4255-GG to frustrate and inhibit the plaintiffs' plans to construct a residential development on their property. Consequently, the plaintiffs argue that their plans to construct a residential development rose above the level of a mere expectation. Additionally, the plaintiffs argue that "this regulation is not for the benefit of public health and safety but an effort to stop the plaintiff's from possible future development." (Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss, p. 6.)
The plaintiffs cite Timber Trails v. Planning and ZoningCommission of Sherman, Superior Court, judicial district of Danbury, Docket No. 27 21 70 (September 16, 1992, Fuller, J., 7 CSCR 1178), for the proposition that the courts have recognized an exception to the rule that general amendments to land use regulations do not comply with the first prong of the classical aggrievement test. According to the plaintiffs, this exception exists where the amendment to the zoning regulations adversely affects the development of some property in a manner different than other property in the town. As a result, the plaintiffs argue that because "the zoning amendments in this case adversely affect the property owned by the plaintiff Fairfield Resources in a different manner than the vast majority of the property in the Town of Brookfield," the plaintiffs are aggrieved by the Commission's decision to reenact the cap on multifamily dwelling units. (Plaintiffs' Supplemental Memorandum of Law in Opposition to Motion to Dismiss, p. 2.)
Additionally, the plaintiffs argue that they are statutorily aggrieved by the Commission's reenactment of the cap on multifamily dwelling units because of the statutory and constitutional violations surrounding the reenactment of the cap on multifamily dwelling units.
"Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal. . . . It is therefore fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved. . . . Standing however is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Brackets omitted; citations omitted; internal quotation marks omitted.) United Cable Television Services Corp.v. Dept. of Public Utility Control, 235 Conn. 334, 342,663 A.2d 1011 (1995). Therefore, aggrievement implicates the plaintiffs' standing to appeal, and represents the first issue the court must CT Page 4255-HH address. McNally v. Zoning Commission, 225 Conn. 1, 5-6,621 A.2d 279 (1993).
"Aggrievement falls within two broad categories, classical and statutory. The factors involved in whether classical aggrievement exists are tempered by the subject matter of the litigation." (Citations omitted; internal quotation marks omitted.) Cole v. Planning ZoningCommission, 30 Conn. App. 511, 514, 620 A.2d 1324 (1993).
"[T]he fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. . . ." (Citations omitted; internal quotation marks omitted.) UnitedCable Television Services Corp. v. Dept. of Public UtilityControl, supra, 235 Conn. 342-43.
"The determination of aggrievement presents a question of fact for the trial court and a plaintiff has the burden of proving that fact." Id., 343. "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." Id. "The conclusions reached by the trial court cannot be disturbed on appeal unless the subordinate facts do not support them." (Citations omitted; internal quotation marks omitted.)Steeneck v. University of Bridgeport, 235 Conn. 572, 580, 668 A.2d 688
(1995).
"General amendments to land use regulations often do not comply with the first prong of the classical aggrievement test."Elsenboss v. Brookfield Zoning Commission, Superior Court, judicial district of Danbury, Docket No. 31 54 62 (April 7, 1995, Stodolink, J.), citing Park City Realty v. Zoning Commission, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 30 76 25 (March 25, 1994, Fuller, J.). "[A]s a matter of law, there can be no aggrievement when the zoning regulations of a municipality are amended in such a way that no particular area or property is affected." Elsenboss v. Brookfield ZoningCommission, supra, citing Sheridan v. Planning Board, 159 Conn. 1,12, 266 A.2d 396 (1969); see also R. Fuller, Land Use Law and Practice § 32.5, p. 536 (1993). Further, "[a]n appellant has CT Page 4255-II a problem of proving a special injury resulting from the enactment of a new zoning regulation which does not restrict existing uses of the appellant's property." Park City Realty v.Zoning Commission, supra.
In Elsenboss v. Brookfield Zoning Commission, supra, the plaintiffs appealed to the Superior Court from the Brookfield Zoning Commission's decision to delete a regulation which had instituted a "condo cap." The deleted zoning regulation, Brookfield Zoning Regulation § 242-404D(2)(d),[3] had provided that "[a]t no time shall the total number of multifamily dwelling units approved by the Zoning Commission exceed twenty-six percent (26%) of the total of all single-family units, as calculated by the Commission, utilizing the monthly tax category report prepared by the Town Assessor." Elsenboss v. BrookfieldZoning Commission, supra. The plaintiffs claimed that they were "aggrieved by the decision of the Commission to delete the regulation since they all live[d] within a zone affected by the change and they . . . [were] all located adjacent to or within 100 feet of a proposed major multi-family development which is a subject of the Commission's decision.[4] . . . Further, the plaintiffs claim[ed] that they . . . [were] all classically aggrieved by the Commission's actions." (Internal quotation marks omitted.) Elsenboss v. Brookfield Zoning Commission, supra. In contrast, the Commission argued that the court lacked subject matter jurisdiction over the appeal because the plaintiffs failed to establish that they were either statutorily or classically aggrieved.
The Elsenboss v. Brookfield Zoning Commission court only addressed the issue of aggrievement in deciding the appeal. TheElsenboss v. Brookfield Zoning Commission court stated that "the parties conceded at oral argument that the subject regulation change applies to all residential zones except R-7. Despite this concession, however, the plaintiffs argue that they are specifically, personally and legally affected by the regulation deletion in that they live near an open tract of land upon which, they . . . [anticipate], a condominium complex may be built in the future. There was no evidence adduced at trial that zoning permits have been issued for the land, that construction has begun on the land or that the building of a condominium complex is somehow a phenomena that cannot occur anywhere else in Brookfield.[5] . . . Therefore, the plaintiffs' allegations cannot rise to the level of aggrievement since the amendment does not affect any particular area of property." Elsenboss v.CT Page 4255-JJBrookfield Zoning Commission, supra. Additionally, the court emphasized that the "plaintiffs have failed to establish that they are affected any differently by this general zoning regulation change than the balance of, the citizenry of Brookfield. Further, they have failed to prove that the development of condominiums is anything other than speculative. Therefore, the plaintiffs have failed to establish classical aggrievement." Elsenboss v. Brookfield Zoning Commission, supra. In Timber Trails v. Planning and Zoning Commission of Sherman, supra, the plaintiffs appealed from the decision of the defendant, Planning and Zoning Commission of the Town of Sherman, to amend the subdivision regulations. Although the plaintiffs challenged three of the amendments, the court focused on the amendment which allowed the defendant to disapprove a subdivision accessible from an existing unimproved or unpaved town road or to condition approval upon completion of improvements to the existing road at the subdivider's expense. The defendant argued that because the regulation applied to the entire town, the plaintiffs were not affected differently from the public in general.
The Timber Trails v. Planning and Zoning Commission of Sherman
court, however, found that "[t]here was evidence that this provision, allowing the Commission to require developers to improve roads outside the subdivision, diminished the value of the properties of both Tessa Pascarella and Timber Trails Associates, and that these properties would be reduced more in value than other properties because of their size." Further, the court emphasized that "[b]oth parcels have frontage on unimproved town roads. Timber Trails Associates owns over 600 acres and Pascarella owns 140 acres. The Town of Sherman contains 23.5 square miles or about 15,000 acres. . . . Subdivision regulations primarily affect persons who have property to be subdivided, namely, land capable of division to create at least one and usually two or more additional lots, which does not include all property owners in the town. . . . In a town with two acre zoning, few property owners have land of sufficient size to be subject to subdivision approval by the Planning Commission. . . . There is no indication that any significant number of other property owners would be subject to this regulation, or that would affect a significant portion of the general public." (Citation omitted.) Id. Consequently, theTimber Trails v. Planning and Zoning Commission of Sherman court concluded that Pascarella and Timber Trails Associates "have shown the possibility (as opposed to a certainty) that the regulation affects them differently from the general public and that they are specially and injuriously affected by the regulation. It is reasonably possible that they will be subjected to it if they propose a subdivision of their properties." CT Page 4255-KK
In view of Elsenboss v. Brookfield Zoning Commission, supra, andTimber Trails v. Planning and Zoning Commission of Sherman, supra, in the present appeal, the court may find that the plaintiffs are not classically aggrieved.
The plaintiffs argue that for some time they have sought to complete the quarrying operations on their property so they could construct a residential development, and that they submitted a proposed site plan for a residential development as part of a stipulated judgment they entered with the Town on March 14, 1994.[6] Consequently, the plaintiffs argue that their plans to construct a residential development rise above the level of a mere expectation. Additionally, the plaintiffs argue in their supplemental memorandum of law in opposition to LHA's motion to dismiss that "the plaintiff Fairfield Resources has presented evidence that its property is only one of three properties in the Town of Brookfield which will be affected by the new zoning regulations." (Plaintiffs' Supplemental Memorandum of Law in Opposition to the Motion to Dismiss, p. 2.) Despite this argument, the court has not found such evidence in the return of record.
In the return of record, Exhibit 1.Y, the News Times published an article entitled "Brookfield quarry plans to develop" on February 3, 1994. In this article, the author wrote that "[i]n a letter to the Zoning Commission, [Fairfield Resources quarry president Robert] Parker said the quarry plans to eventually build a mix of housing on the residentially zoned site, including affordable housing." (Return of Record [ROR], Item 1.Y: Document with cover page entitled, "Condo Economics-Impact of Abandoning the Condo Cap" and various attached newspaper articles, submitted at Public Hearing).
Additionally, in Exhibit 1.BB, Dennis Stone of the Charter Group wrote a letter to Eugene Golaszewski, the Chairman of the Commission. In the letter, Stone opposed the reinstatement of the cap on multifamily dwelling units because, inter alia, the "elimination of the condo cap does not leave the Town of Brookfield open for unlimited condo development." Specifically, Stone emphasized that multifamily projects in Brookfield "are only done by a special permit process that must be carefully reviewed by the Zoning Commission. The Zoning Commission cannot approve a project unless it meets all its criteria. For example, Projects cannot be closer than 3000 ft., they are limited to only certain roads, they need a minimum of 10 acres, and they must meet strict health and safety guidelines. In fact, there are very few places left in Brookfield where a multifamily project would be allowed under the existing regulations." (ROR, Item 1.BB: Letter dated December 15, 1994 to Eugene Golaszewski CT Page 4255-LL from Dennis K. Stone of Charter Group, submitted at Public hearing.)
Despite the above arguments and evidence in the return of record, the return of record does not indicate how many parcels of land the reenactment of the cap on multifamily dwelling units would affect. In the absence of evidence on that issue, the court may presume the plaintiffs' land represents only one of many parcels which would be affected by the cap on multifamily dwelling units.
In contrast with Timber Trails v. Planning and Zoning Commissionof Sherman, supra, "where general amendments to subdivision regulations specifically impacted large undeveloped parcels of the plaintiffs, and there were no other comparable large land owners in the town," the plaintiffs have not demonstrated that this appeal is a situation where the plaintiffs are one of only a few property owners in the municipality which have parcels which will be affected by a change in the regulations. Park CityRealty v. Zoning Commission, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 30 76 25 S (March 25, 1994, Fuller, J.). Further, the plaintiffs have not presented evidence that zoning permits have been issued for the property, or that construction has begun on the property, or that building of multifamily dwelling units cannot occur elsewhere in Brookfield. The plaintiffs have not demonstrated aggrievement because they have not shown more than a speculative interest in developing multifamily dwelling units on their property, nor have they shown that the cap would only affect a particular few landowners in Brookfield. Thus, the plaintiffs have not shown the "possibility as distinguished from a certainty" that reenactment of the cap would affect them differently from the general public, nor that they would be specially and injurious affected by reenactment of the cap. See Timber Trails v.Planning and Zoning Commission of Sherman, supra. Consequently, because "[t]he determination of aggrievement presents a question of fact for the trial court and a plaintiff has the burden of proving that fact" (UnitedCable Television Services Corp. v. Dept. of Public Utility Control, supra,235 Conn. 343), and because the plaintiffs in this appeal have not met this burden, the plaintiffs are not classically aggrieved.
"Statutory aggrievement exists by legislative fiat, which grants appellants standing by virtue of a particular legislation, rather than by judicial analysis of the particular facts of the case." (Citations omitted; internal quotation marks omitted.) Cole v. Planning ZoningCommission, 30 Conn. App. 511, 514-15, 620 A.2d 1324 (1993). "In Colev. Planning Zoning Commission, . . . [supra, 514] the Appellate Court held that the plaintiffs in that case as owners of land within a zone to which a zoning amendment applied had proved statutory aggrievement. That does not mean, however, that a general amendment to the zoning CT Page 4255-MM regulations applying to all or almost all properties in the town, gives any property owner a standing to appeal the zoning amendment. That would undercut the entire purpose of the classical aggrievement provision in [General Statutes, Sec.] 8-8. Statutory aggrievement was enacted to eliminate the requirement that an appellant prove specific injury when appealing from a decision concerning nearby or abutting property." (Internal quotation marks omitted.) Elsenboss v. Brookfield ZoningCommission, supra, citing Park City Realty v. Stratford ZoningCommission, supra.
In Elsenboss, the court addressed not only whether the plaintiffs were classically aggrieved, but also whether the plaintiffs were statutorily aggrieved. The court found that the "decision of the Commission was to delete a portion of the regulations that affects the entire Town of Brookfield, not the plaintiffs individually. Statutory aggrievement only applies where there is land involved in the decision of the Commission. The decision of the Commission making a general amendment to the zoning regulations does not involve any specific land. It applies throughout the town and does not take away any existing permitted uses on any land in the town. While some amendments to zoning regulations may allow an appeal based upon statutory aggrievement, that is not the situation here. . . . Since the Commission's deletion of the regulation affects the entire town and not the plaintiffs, individually, they have failed to prove statutory aggrievement." (Citations omitted; internal quotation marks omitted.)
The case of Elsenboss is dispositive on the issue in this appeal of whether the plaintiffs are statutorily aggrieved. General Statutes § 8-8(a)(1) provides that "`[a]ggrieved person' means a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board. In the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, `aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in thedecision of the board." (Emphasis added.)
The court concludes that the Commission's reenactment of the cap on multifamily dwelling units affects the entire Town, and the plaintiffs have not demonstrated that the reenactment of the cap affects them individually. Further, "[s]tatutory aggrievement only applies where there is land involved in the decision of the Commission," and the Commission's reenactment of the cap on multifamily dwelling units did CT Page 4255-NN not involve specific land. See Elsenboss v. Brookfield ZoningCommission, supra; General Statutes § 8-8(a)(1). Moreover, the cap on multifamily dwelling units applies throughout the Town and "does not take away any existing permitted uses on any land in the town." See id. The cap on multifamily dwelling units does not prevent the plaintiffs from presently using their property as a quarry, nor does the cap on multifamily dwelling units specifically prevent the plaintiffs from building multifamily dwelling units on their property at a future date. There is no statutory aggrievement.
Additionally, the plaintiffs summarily mention in their memorandum of law in opposition to LHA's motion to dismiss that they also are statutorily aggrieved based on the other statutory and constitutional violations alleged in their second revised appeal. (Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss, p. 6, stating that "the plaintiffs are also statutorily aggrieved by the actions of the defendant, Brookfield Zoning Commission. In its complaint, the plaintiffs, Fairfield Resources, et al., have recited numerous statutory and constitutional violations surrounding the enactment of the zoning regulations"). The plaintiffs in their second revised appeal allege in counts II-IV violations of the constitution of Connecticut, including article first, § 11, and the fifth and fourteenth amendments to the United States constitution. Despite alleging counts II-IV in their second revised appeal, the plaintiffs have failed to brief these issues in either their memorandum of law in opposition to LHA's motion to dismiss or in their supplemental memorandum of law in opposition to LHA's motion to dismiss. Generally, "[w]here an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived."Bridgeport Hospital v. Commission on Human Rights Opportunities,232 Conn. 91, 115, 653 A.2d 782 (1995).
"Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal." (Citations omitted; internal quotation marks omitted.) United CableTelevision Services Corp. v. Dept. of Public Utility Control, supra,235 Conn. 342. Further, "[t]he determination of aggrievement presents a question of fact for the trial court and a plaintiff has the burden of proving that fact." (Citation omitted; internal quotation marks omitted.)United Cable Television Services Corp. v. Dept. of Public Utility Control, supra, 235 Conn. 343.
The motion to dismiss is granted.
Mihalakos, J. CT Page 4255-OO